**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 02-60478-Civ-Jordan/Torres

ALEXANDER S. ORENSHTEYN,

     Plaintiff,

v.

CITRIX SYSTEMS, INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

This matter is before the Court on Defendant's Motion for Attorneys' Fees and Expenses [D.E. 183, 184] that was referred to the undersigned by the Honorable Adalberto Jordan for a Report and Recommendation pursuant to 28 U.S.C. § 636 and S.D. Fla. Mag. J. R. 4(b) [D.E. 253, 254].  The pending motion is ripe for disposition. Upon review of the record in this case and all relevant pleadings filed in connection with the Motion for Attorneys' Fees and related sanctions motions, and for the reasons that follow, Defendants' request for attorneys' fees and expenses should be Granted in Part and Denied in Part.

### I.  BACKGROUND

As Judge Jordan's Order of January 5, 2007 details, Plaintiff alleged that Defendant had infringed on two patents issued to him: United States Patent Number 5,889,942 ("the '942 patent"), entitled "Secured System for Accessing Application Services from a Remote Station," issued to Plaintiff on March 30, 1999; and United States Patent Number 6,393,569 ("the '569 patent"), entitled "Secured System for Accessing Application Services from a Remote Station," issued to Plaintiff on May 21, 2002.  On April 2, 2002,

Plaintiff filed suit against Defendant, alleging that Defendant "has for a long time past infringed and still is infringing, actively inducing the infringement of, and contributorily infringing at least claim 1" of the '942 and '569 patents.  Defendant subsequently moved for summary judgment on the issues of non-infringement and invalidity, arguing that the undisputed evidence revealed that none of the alleged products infringed on the claims of either the '942 or '569 patents, and that those patents were fully anticipated by at least five prior arts.

The Court ultimately agreed with Defendant and granted summary judgment in its favor on the infringement issue.  At the summary judgment stage, Plaintiff  did not provide evidence that Defendant's claim construction directly contradicted the patent specifications; Plaintiff also failed to offer a viable alternative to the claim construction Defendant asserted.  Additionally, Plaintiff did not present sufficient evidence that the accused products infringed on each and every claim of his patents.  At summary judgment, Plaintiff submitted evidence seeking to show that one of the accused products infringed on only one claim–claim 1–of his '942 patent, but offered no evidence relating to any of the other claims allegedly infringed.  The evidence provided to show infringement of claim 1 of the '942 patent was insufficient to require a trial.

Defendant then moved for attorneys' fees and costs via four distinct sources of legal authority.  On April 8, 2005, the District Judge held an evidentiary hearing where the parties had an opportunity to present evidence on Citrix's motions.  The motions were granted in part, based upon Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, as against Plaintiff Orenshteyn individually as well as his lawyers Fink and Johnson.  Judge Jordan referred to the undersigned the responsibility of reviewing the record evidence presented and determining the amount of attorney's fees and costs that should be awarded.

## II.   ANALYSIS

### A.   Calculation of Reasonable Attorneys' Fees

Before addressing the apportionment of the fees awarded by Judge Jordan's Order as between the Plaintiff individually and his lawyers Fink and Johnson, we will first turn to the question of the maximum extent of reasonable attorneys' fees that Defendant could be awarded under the findings set forth in Judge Jordan's Order of January 5, 2007.

In awarding fees, "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  The Court has ultimate discretion to determine, assuming there is legal entitlement to fees, whether a party to a case has demonstrated that a request for fees is reasonable and compensable.  *E.g., Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1492-93 (11th Cir. 1994).  Any fees awarded must be reasonable and fall within the guidelines the Eleventh Circuit has promulgated. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). Consequently, it is within a court's discretion to adjust the fees to an amount it deems proper in accordance with those parameters.  *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990).

The Eleventh Circuit has adopted the lodestar method for determining reasonable attorneys' fees.  The lodestar method consists of determining the reasonable hourly rate and multiplying that number by the number of hours reasonably expended by counsel. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299.

### 1.   Reasonable Hourly Rates

When calculating the lodestar amount, the Court first determines the reasonable hourly rate.  This Circuit defines the reasonable hourly rate to be the "prevailing market

rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F.2d at 1299.  Several well established factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*[1]  The party who applies for attorneys' fees is responsible for submitting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate.  *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman*, 836 F.2d at 1299.  The Court, however, is deemed an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

This case generally requires knowledge regarding patent infringement law.  Ultimately, this is not an overly unusual patent case but it does clearly require an experienced patent litigation lawyer.  With that in mind, the Court reviewed the information and materials filed by Defendant's lawyer to determine the prevailing market

---

[1]     The 12 *Johnson* factors are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

rate in this legal community for "similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.

Defendant was represented in this case by very reputable law firms–Goodwin Procter LLP, Testa, Hurwitz & Thibeault, LLP, Shook, Hardy & Bacon, and Brown McCarroll LLP.  Defendant asks for the following hourly rates for the following hours expended for its various attorneys:

### Goodwin Lawyers

Partner and lead counsel Douglas J. Kline - $550 per hour for 23 hours;

Senior Associates - $430 per hour for 34.5 hours; and

Mid-level Associates - $390 per hour for 8.5 hours.

### Testa Lawyers

Partner and lead counsel Douglas J. Kline - $440 per hour before June 1, 2003, $450 per hour from June 1, 2003, to December 31, 2003, and $460 per hour from December 31, 2003, to December 31, 2004, for 511.5 hours;

Other Testa Partners - $440 to $450 per hour for 37.75 hours;

Testa Senior Associates - $320 to $350 per hour for 1,293 hours;

Testa Mid-level Associates - $195 to $285 per hour for 1,923.25 hours;

Testa Junior Associates - $165 to $185 per hour for 898.5 hours; and

Testa Paralegals and other Specialists - $90 to $185 per hour for 399.75 hours.

### Shook Lawyers

Partner Michael R. Tein - $225 to $265 per hour for 44.4 hours; and

Associates - $140 to $185 per hour for 37.9 hours.

### Brown Lawyers

Of Counsel Douglas N. Gordon - $290 per hour for 43.9 hours;

Partner - $240 per hour for 2.2 hours; and

Associates - $135 per hour for 24 hours.

The Court finds that some of these rates are unreasonable in the South Florida legal community for the types of services that were required in this case.  We will, therefore, apply the following more reasonable rates:

**<u>Goodwin Lawyers</u>**

Partner and lead counsel Douglas J. Kline - a blended rate of $350 per hour;

Senior Associates - a blended rate of $250 per hour; and

Mid-level Associates - a blended rate of $220 per hour.

**<u>Testa Lawyers</u>**

Partner and lead counsel Douglas J. Kline - a blended rate of $350 per hour;

Other Testa Partners - a blended rate of $300 per hour;

Testa Senior Associates - a blended rate of $250 per hour;

Testa Mid-level Associates - a blended rate of $220 per hour;

Testa Junior Associates - a blended rate of $200 per hour; and

Testa Paralegals and other Specialists - a blended rate of $100 per hour.

**<u>Shook Lawyers</u>**

Partner Michael R. Tein - a blended rate of $245 per hour; and

Associates - a blended rate of $163 per hour.

**<u>Brown Lawyers</u>**

Of Counsel Douglas N. Gordon - $290 per hour;

Partner - $240 per hour; and

Associates - $135 per hour.

The reason why these adjustments to the hourly rates are necessary can be found by reference to *Johnson* factors (2) and (3).  While patent infringement is considered a specialized area of law, the issues in this case do not warrant the type of billing rates that

Defendant requested here.  Indeed, Counsel did not submit any specific evidence supporting the application that attested to lead counsel's experience and that of the lawyers he works with, and why that type of experience (and resulting hourly rate) was necessary in the case.  The Court was required to conduct its own examination of the record and research the backgrounds of the Defendant's attorneys' to arrive at the conclusion that the billing rates requested here were unnecessary and excessive in this case.  "[E]ven if a party chooses to employ counsel of unusual skill and experience, the court awards only the fee necessary to secure reasonably competent counsel." *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1183 (N.D. Cal. 2004).  Accordingly, the Court has reduced these rates to a much more reasonable amount, reflective of what would be appropriate to secure competent legal counsel in the relevant legal community in South Florida.

Defendant's fee application does not take into account this Circuit's precedent in *ACLU of Georgia* that squarely applies here.  The Eleventh Circuit reversed a district court's award of New York legal fees to counsel who prosecuted a civil rights case in the Northern District of Georgia.  The Court reaffirmed the principle that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *ACLU of Georgia*, 168 F. 3d at 437 (quoting *Cullen*, 29 F.3d at 1494).  Consequently, if a fee applicant seeks to recover non-local rates for an attorney who is not from the place where the case was filed, "he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.*  The Court thus reversed the district court for awarding non-local rates without finding that the plaintiffs had carried their burden of showing that there were no attorneys in the area who were willing and able to handle the case.

It would, therefore, be error for us to award the eye-catching rates for primarily out-of-market lawyers in a patent case filed in the Southern District of Florida that did not involve any issues so complex or unusual that a plethora of local intellectual property and patent litigation lawyers would not have been able to handle.  Indeed, Defendant has not tackled this issue at all by arguing that the rates requested here are commensurate with those rates normally charged in this legal market.  To the contrary, Defendant's expert, Edward J. Kelly, specifically states: ". . . the hourly rates charged by Citrix's counsel for their work in the Lawsuit are reasonable in an absolute sense and in comparison to those charged in the community by attorneys of comparable experience and skill."  Mr. Kelly, however, does not specify to which community he refers, but the Court reads his statement as referring to the Boston legal community, which differs vastly from the South Florida legal community.  Thus, as *ACLU of Georgia* requires, the Court must refrain from awarding Boston rates if Defendant cannot show a lack of attorneys in South Florida capable of handling the case at hand.

Therefore, under *ACLU of Georgia*, the Court finds that the hourly rates requested, for both the partners and associates, are to some extent not reasonable by South Florida standards.  The Court finds that there are adequate lawyers practicing intellectual property, who specialize in patent infringement litigation, capable of handling this case in this market at much lower billable rates.  These findings thus support the Court's downward adjustment of the hourly rates that can be charged against Plaintiff.  The blended rates set forth above for the partners, associates and paralegals who worked on the case are appropriate under the circumstances and are commensurate with the prevailing market rates for comparable skills and experience in the South Florida legal market.

## 2.   *Hours Reasonably Expended*

The second component of the lodestar method requires the Court to determine the amount of hours reasonably expended by Defendant's counsel.  This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*"  *ACLU of Georgia*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).  This means that the "district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434.

Accordingly, "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Id.* at 434-35.  The burden is upon the applicant for fees to submit detailed documentation that will assist the court in determining the amount of fees to properly and reasonably award.  *ACLU of Georgia*, 168 F.3d  at 428.  The fee applicant must provide the Court with specific and detailed evidence that will allow the Court to accurately determine the amount of fees to be awarded.  *Id.*

At the same time, the party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded. *Id.*  In the final analysis, however, "exclusion for excessive or unnecessary work on given tasks must be left to the discretion of the district court."  *Norman*, 836 F.2d at 1306.

Here, Defendant's counsel requests an award of $1.5 million dollars.  Defendant's counsel submitted lengthy time records exhibiting billing rates and hours billed by all attorneys, except for the Shook Hardy lawyers, including descriptive summaries of work that was accomplished during those hours.  We have reviewed all the evidence submitted

in support of this fee application in painstaking detail.  After doing so, however, we find that the amount of hours billed in this matter were excessive to some degree.  The Court must, therefore, disallow those hours requested that are in excess of what should be assessed against Plaintiffs.

Fee applicants must exercise what the Supreme Court has termed "billing judgment." *ACLU of Georgia*, 168 F.3d at 428 (quoting *Hensley*, 461 U.S. at 434). "Reasonably competent counsel do not bill hours that are 'excessive, redundant, or otherwise unnecessary." *Yahoo!, Inc.*, 329 F. Supp. 2d at 1183 (quoting *Hensley*, 461 U.S. at 434).  Although certain reductions were already made as evidenced by the billing records, the Court finds that even with those deductions the amount of hours billed in this fee application reflect insufficient billing judgment on various fronts.

First, upon reviewing those hours billed on the litigation itself that are compensable, the Court found a great deal of excessive or redundant hours that must be pruned.  One major cause of the excessive hours billed is the use of multiple attorneys in this matter.  While there is nothing inherently unreasonable about a client relying on multiple attorneys, the fee applicant must establish that the time spent reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple lawyer litigation. *ACLU of Georgia*, 168 F.3d at 432; *see also Johnson v.University College of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983).

Here, based on the descriptions of the work performed by the various attorneys at Goodwin Procter and at Testa Hurwitz, this Court not only found multiple attorneys billing for completing the same tasks, but also each attorney repeatedly billing multiple hours for those same tasks.  The Court must thus eliminate the redundant and repetitive hours in the application keeping in mind that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and

not the least time in which it might theoretically have been done." *Norman*, 836 F.2d at 1306.

Second, the Court's task was made more difficult by descriptions of the work done and hours billed that were ambiguous and vague.  For instance, it was difficult to determine whether John D. Lanza's "Draft amended answer" for .50 hours, "revise Answer to include further details" for 2.25 hours (this time entry also combined the revision to the answer with an office conference with two other attorneys), "revise amended answer" for .75 hours, "Review and revise amended answer" for .50 hours was distinctly different from Douglas J. Kline's "review amended answer" for 1.5 hours, "review amended answer" for .50 hours, "review amended answer" for 1 hour and from Christina N. Smith's "review amended answer" for 5.75 hours.  Not that this last time entry also combined reviewing the amended answer with reviewing cases, attending meetings and participating in telephone conferences,  drafting an opposition to a motion, revising the case calendar, and reviewing a court order, together with "check citations in amended answer" for 2 hours (which itself combined checking the citations in the amended answer with a telephone conference ,a meeting, pulling exhibits, and revising the calendar).

After reviewing all the time entries, there were multiple occasions like these where multiple and redundant time entries appeared.  Thus, the fees awarded should not include compensation for three or more lawyers doing redundant work.  This was a particular problem because of the number of lawyers who billed on this case.

Third, the Court's review of the time entries revealed other problems with the fee application.  For instance, some of the paralegals in this case billed for secretarial work, which is not recoverable under an attorney's fee application.  As one example, Andrea N. Boivin billed 10.5 hours for "Page-check 7 copies of appendice of exhibits; make edits to affidavits; insert cites; create appendix cover sheets," 6 hours for "Assist Gary Grossman

with preparation of materials for hearing; telephone calls with vendor; fax page to local counsel; attention to completion of citations in brief; input edits of DJK; complete Table of Cases, Table of Contents; proof brief," and  1 hour for "Telephone call with clerk [redacted] copy of cases for W.Meunier."  These are just three examples of numerous hours billed for secretarial work.  Accordingly, the Court must reduce the number of people who can recover the hours billed in this matter.  The Court made a conscious effort to identify those people that were evidently principal players in the litigation and only disallow the hours billed by those who were marginal players at best.  The Court also discounted the hours billed for secretarial work.

The decision to take all these factors into account upon exercising the Court's duty to carefully review the fee application does not, of course, constitute personal criticism of the lawyers or staff persons involved.  Defendant is certainly very well represented by a team of lawyers who are highly paid to make sure that the work they perform for their client is close to perfect as possible.  A "reasonable" fee application, however, is not designed to compensate for premium billing and premium-level services.  It is designed to provide adequate compensation that is reasonable to bill to one's adversary irrespective of the skill, reputation or experience of counsel.  *Norman*, 836 F.2d at 1301.  And that is the case whether the fee award is based on a prevailing party statute or, as here, statutory sanction provisions like Rule 11 and section 1927.  Awards of fees under such sanction statutes are no exception.  *See, e.g., View Eng'g, Inc. v. Robotic Vision Systems, Inc.,* 208 F.3d 981, 987 (Fed. Cir. 2000) (awarding Rule 11 sanctions and attorneys' fees against counter-plaintiff in patent infringement action based upon unfounded counterclaims; attorneys' fees award for entire defense of counterclaims based on reduced lodestar amount).

Finally, we turn to the calculation of the adjusted number of hours that may be awarded in this case. The Court usually has two options. The Court can decide to follow the usual course of engaging in a task-by-task examination of the hours billed to excise excessive or redundant hours. *E.g.*, *ACLU of Georgia*, 168 F.3d at 429. Or, when the number of hours involved is very high, the Court can conclude that an hour-by-hour analysis is impractical. *See, e.g., St. Fleur v. City of Fort Lauderdale*, 2005 WL 2077742, *4 (11th Cir. August 29, 2005) (given that Plaintiff's counsel claimed over 1,500 hours in compensation, the district court did not abuse its discretion by failing to engage in a more detailed, task-by-task analysis of fees it was disallowing; affirming thirty percent across the board reduction)' *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (determining that 569.30 hours submitted for compensation "are extensive enough that we do not expect the district court or magistrate judge to conduct an hour-by-hour analysis in this case"; affirming twenty-five percent across the board reduction); *see also Evans v. City of Evanston*, 941 F.2d 473, 476-77 (7th Cir. 1991) (affirming sampling methodology as a means for managing fee litigation and facilitating review).

Upon reviewing the record as a whole and the amount of hours requested for the type of tasks involved, the Court initially found that a material across-the-board reduction was appropriate to arrive at only a reasonable fee amount in this case, as opposed to the excessive fees requested. But, given the nature of the fee award involved – sanctions for filing frivolous litigation – we concluded that it would be more fair to Defendant to conduct a line-by-line review to make sure that Defendant obtained the maximum amount for all the *reasonable* fees that Defendant is entitled to as per Judge Jordan's Order. As it turned out, the across-the-board reduction that the Court had in mind paralleled the result of a line-by-line review.

Accordingly, the Court will recommend an award to Defendant of $573,838 in attorneys' fees based upon the task-by-task examination we conducted. Shook's fees and Brown's fees are awarded in their entirety as the Court found their fee request reasonable. Only Goodwin Procter's and Testa Hurwitz's fees were reduced. To comply with the Court's obligation to adequately demonstrate the bases for the Court's reductions, as per *Hensley* and *ACLU,* the following Table has been prepared to show by month and timekeeper what deductions were made to the fee application.

*TABLE OF DEDUCTIONS TO FEES REQUESTED*

| **May 31, 2002** | | |
|---|---|---|
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Christopher J. Frerking | 2.0 | $370.00 |
| Elias C. Behrakis | 1.25 | $250.00 |
| Lorraine A. Jewkes | 1.0 | $110.00 |
| Leslie A. Bitman | 0.50 | $90.00 |
| | | **Total $820.00** |
| **June 28, 2002** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 0.50 | $220.00 |
| Kia L. Freeman | 0.25 | $52.50 |
| Leslie A. Bitman | 0.25 | $45.00 |
| | | **Total $317.50** |

| **July 31, 2002** | | |
|---|---|---|
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 1.0 | $440.00 |
| Amanda J. Metts | 9.25 | $2,312.50 |
| Robert S. Blasi | 2.0 | $370.00 |
| | | **Total $3,122.50** |
| **August 28, 2002** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 6.75 | $2,970.00 |
| John J. Cotter | 0.25 | $110.00 |
| Christina N. Smith | 6.75 | $1,687.50 |
| Kimberly A. Flores | 11.0 | $1,210.00 |
| Andrea N. Boivin | 2.5 | $425.00 |
| Lorraine A. Jewkes | 0.25 | $27.50 |
| Lila J. Abraham | 0.25 | $22.50 |
| | | **Total $6,452.50** |
| **September 27, 2002** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 1.5 | $660.00 |
| Andrea N. Boivin | 8.25 | $1,402.50 |
| | | **Total $2,062.50** |
| **Octber 31, 2002** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 4.0 | $1,760.00 |
| Karen K. Chan | 3.5 | $577.50 |
| Andrea N. Boivin | 2.75 | $467.50 |
| | | **Total $2,805.00** |

| November 27, 2002 | | |
|---|---|---|
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 1.75 | $770.00 |
| Ryan D. Cabinte | 11.75 | $1,938.75 |
| Edward A. Gordon | 67.0 | $11,055.00 |
| Andrea N. Boivin | 23.0 | $3,910.00 |
| Leslie A. Bitman | 1.0 | $180.00 |
| Lila J. Abraham | 0.50 | $45.00 |
| | | Total $17,898.75 |
| December 27, 2002 | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Jonathan M. Moulton | 0.25 | $112.00 |
| Thomas A. Turano | 2.0 | $880.00 |
| Duncan A. Greenhalgh | 0.25 | $85.00 |
| Amanda J. Metts | 69.25 | $17,312.50 |
| Irina V. Gott | 15.0 | $2,475.00 |
| Ryan D. Cabinte | 1.75 | $288.75 |
| Kenneth E. Radcliffe | 43.50 | $7,177.50 |
| James C. De Vellis | 35.75 | $5,362.50 |
| Andrea N. Boivin | 39.0 | $6,630.00 |
| Leslie A. Bitman | 0.50 | $90.00 |
| Lila J. Abraham | 1.0 | $90.00 |
| | | Total $40,503.25 |

| January 28, 2003 | | |
|---|---|---|
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 2.75 | $1,210.00 |
| Christopher W. Stamos | 0.25 | $87.50 |
| Amanda J. Metts | 8.75 | $2,187.50 |
| Gary M. Grossman | 74.0 | $18,500.00 |
| Mayeti Gametchu | 43.0 | $7,955.00 |
| Irina V. Gott | 2.25 | $371.25 |
| Sarah E. Rimsky Levitin | 8.50 | $1,402.50 |
| Kenneth E. Radcliffe | 29.50 | $4,867.50 |
| Adam J. Chandler | 4.50 | $742.50 |
| James C. De Vellis | 50.75 | $7,612.50 |
| Andrea N. Boivin | 43.50 | $7,395.00 |
| Leslie A. Bitman | 1.0 | $180.00 |
| | | **Total $52,511.25** |
| **February 28, 2003** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 2.75 | $1,210.00 |
| John J. Cotter | 0.50 | $0.00 |
| Heidi M. Mitza | 31.25 | $6,562.50 |
| Mayeti Gametchu | 2.0 | $0.00 |
| Robert S. Blasi | 94.25 | $19,792.50 |
| Andrea N. Boivin | 47.50 | $8,550.00 |
| Leslie A. Bitman | 0.75 | $0 |
| | | **Total $36,115.00** |

| **March 31, 2003** | | |
|---|---|---|
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 0.75 | $330.00 |
| Hannah H. Marsdale | 7.25 | $1,522.50 |
| Edward A. Gordon | 55.25 | $9,116.25 |
| James C. De Vellis | 9.75 | $1,462.50 |
| Andrea N. Boivin | 14.50 | $2,610.00 |
| | | **Total $15,041.25** |
| **April 30, 2003** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 2.50 | $220.00 |
| Robert S. Blasi | 87.75 | $15,277.50 |
| Edward A. Gordon | 37.75 | $3,465.00 |
| Kathryn A. Chambers | 3.0 | $360.00 |
| Andrea N. Boivin | 31.0 | $1,890.00 |
| | | **Total $21,212.50** |
| **May 2003** | | |
| No data available | | |
| **June 30, 2003** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Thomas A. Turano | 1.0 | $440.00 |
| Gary M. Grossman | 12.50 | $3,625.00 |
| Edward A. Gordon | 24.25 | $4,001.25 |
| Andrea N. Boivin | 12.50 | $2,250.00 |
| | | **Total $10,316.25** |

| **July 31, 2003** | | |
| --- | --- | --- |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Antonio G. Gomes | 0.75 | $258.00 |
| Gary M. Grossman | 0.25 | $75.00 |
| Robert S. Blasi | 0.75 | $183.75 |
| Andrea N. Boivin | 2.00 | $380.00 |
| | | **Total $896.75** |
| **August 2003** | | |
| No data available | | |
| **September 15, 2003** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Gary M. Grossman | 0.25 | $75.00 |
| Robert S. Blasi | 10.75 | $2,633.75 |
| Andrea N. Boivin | 8.0 | $1,520.00 |
| | | **Total $4,228.75** |
| **September 30, 2003** | | |
| Attorneys and Paralegals | Hours Billed | Cost to Client |
| Gary M. Grossman | 0.25 | $75.00 |
| | | **Total $75.00** |
| **October 21, 2003** | | |
| No deductions | | |
| **November 26, 2003** | | |
| No deductions | | |
| **December 2003** | | |
| No data available | | |
| **January 31, 2004** | | |
| No deductions | | |

| | | |
|---|---|---|
| **February 2004**<br><br>No data available | | |
| **March 2004**<br><br>No data available | | |
| **April 30, 2004**<br><br>No deductions | | |
| **May 31, 2004**<br><br>Attorneys and Paralegals<br><br>Andrea N. Boivin | Hours Billed<br><br>0.25 | Cost to Client<br><br>$50.00<br><br>**Total $50.00** |
| **June 30, 2004**<br><br>No deductions | | |
| **July 2004**<br><br>No data available | | |
| **August 31, 2004**<br><br>No deductions | | |
| **September 2004**<br><br>No data available | | |
| **October 28, 2004**<br><br>No deductions | | |
| **November 30, 2004**<br><br>No deductions | | |
| **December 30, 2004**<br><br>Attorneys and Paralegals<br><br>Lila J. Abraham | Hours Billed<br><br>0.25 | Cost to Client<br><br>$32.50<br><br>**Total $32.50** |
| **January 31, 2005**<br><br>No deductions | | |

| **February 2005** | | |
|---|---|---|
| No data available | | |
| **March 2005** | | |
| No deductions | | |
| **April 2005** | | |
| No deductions | | |

**Total Deductions of $214,461.25**

\* \* \*

**B.   _Costs and Litigation Expenses_**

Defendant also requests an award for all of its costs incurred in the litigation.  The total amount requested is $273,984.73.  These costs include Goodwin's disbursements in the amount of $1,563.98, Testa's disbursements in the amount of $213,797.55, Shook's disbursements in the amount of $17,155.00, Brown's disbursements in the amount of $230.32, Dr. Fortes's fee of $28,300 for his work as an expert and Dr. Fortes's costs of $5,018.23, Deloitte & Touche's fee of $20,696 for its work as an expert on damages, and mediation costs of $1,962.87.

The Court could, of course, scrutinize the costs requested with the same level of detail that it engaged in for the fee petition.  The Court will not do so primarily because Plaintiff's and his counsel's failure to satisfy their obligation to make specific and precise objections to the costs requested must have consequences.  Here, the Court has excused that failure in part with respect to the attorneys' fees, based largely on the magnitude of the fee initially requested.  The Court will not do so again with respect to the costs, also due in part to the Court's review of those costs that shows that, for the most part, they are more reasonable than the fees requested.

Having said that, the Court will reduce Testa's costs by fifty percent as the current amount claimed is unreasonable on its face.  There is no support in the record for such a high cost award.  Testa's itemization of costs does not show how it was reasonable for Testa to have charged costs for such an extraordinary amount.  The Court, however, will not make further adjustments to the costs requested because they are not as affected by the prevailing market rate issues that heavily affect the fee award.  Accordingly, the Court will grant costs in the total reduced amount of $181,825.17.

### III.   CONCLUSION

Accordingly, based on a thorough review of Defendant's Motion for Attorneys' Fees and Expenses [D.E. 183, 184], it is hereby **RECOMMENDED** as follows:

1.      Defendant's Motion should be **GRANTED IN PART AND DENIED IN PART.** Defendant should recover from Defendants $573, 838 in attorneys' fees and $181,825.17 in costs, for a total award of $755,663.17, which should be assessed jointly and severally against Plaintiff and his counsel, Mr. Fink and Mr. Johnson.  Any monies obtained from one defendant must be reduced from the total sums owed by the other defendants, so as to preclude a double recovery.

2.      The Court should enter a fee judgment, pursuant to Fed. R. Civ. P. 58, for that amount.

3.      Pursuant to S.D. Fla. Mag. J. R. 4(b), the parties have ten business days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of any finding in this Report and Recommendation and bar the parties from attacking on appeal the findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte*

*v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

> **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 2nd day of November, 2007.

<br>

_____
EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
Honorable Adalberto Jordan
All counsel of record