UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 02-60478-CIV-JORDAN

| | |
|---|---|
| ALEXANDER S. ORENSHTEYN | ) |
|     Plaintiff | ) |
| vs. | ) |
| CITRIX SYSTEMS, INC., | ) |
|     Defendant | ) |

### ORDER

    As explained below, Citrix's motion for sanctions against Mr. Orenshteyn, Mr. Fink, and Mr. Johnson [D.E. 337] is GRANTED IN PART.

### I. PROCEDURAL HISTORY

    On April 9, 2002, Mr. Orenshteyn filed suit against Citrix, alleging that it "has for a long time past infringed and still is infringing, actively inducing the infringement of, and contributorily infringing at least claim 1" of the '942 and '569 patents. Citrix subsequently moved for summary judgment on the issues of non-infringement and invalidity. I ultimately agreed with Citrix, adopted its claim construction, and granted summary judgment in its favor on the infringement issue. I also granted in part Citrix's motion for sanctions under Rule 11 against Mr. Orenshteyn, Mr. Fink, and Mr. Johnson, and under 28 U.S.C. § 1927 against Mr. Fink and Mr. Johnson. The Federal Circuit disagreed with my claim construction on one issue and reversed both the grant of summary judgment and the award of Rule 11 sanctions. It also vacated and remanded the award of sanctions under § 1927, noting that only Mr. Fink and Mr. Johnson's failure to correct Mr. Orenshteyn's false testimony could serve as the basis for § 1927 sanctions under my previous order. *See Orenshteyn v. Citrix Systems, Inc.*, 341 Fed.Appx. 621 (Fed. Cir. 2009).

    Citrix has moved anew for sanctions against Mr. Orenshteyn under the court's inherent powers and against Mr. Fink and Mr. Johnson under both § 1927 and the court's inherent powers, based upon Mr. Orenshteyn's false testimony and Mr. Fink's and Mr. Johnson's failure to correct it, as well as the discovery abuses that provide context for the false testimony, and the myriad ways proceedings were allegedly multiplied as a result of that testimony.

As a preliminary matter, Mr. Orenshteyn, Mr. Fink, and Mr. Johnson argue that Citrix cannot seek sanctions beyond the portion of § 1927 sanctions remanded to this court by the Federal Circuit, specifically that Citrix cannot seek sanctions under the court's inherent powers. I disagree. In the original sanctions order, I declined to reach the issue of whether sanctions were appropriate under the court's inherent powers. The Federal Circuit, therefore, did not have before it any sanctions determinations under that authority. The Federal Circuit has consistently held that "while a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *See Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed. Cir. 1999) (internal quotations omitted). *See also Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) ("issues actually decided on appeal – those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court – are foreclosed from further consideration"). Because sanctions under inherent powers were not "actually decided on appeal," the mandate does not foreclose my consideration of sanctions under that theory.

## II. Factual Background

Mr. Orenshteyn, together with his attorneys, attempted to circumvent discovery in this case and prevent Citrix from discovering Mr. Orenshteyn's basis for filing suit. When Citrix attempted to depose Mr. Orenshteyn as the person most knowledgeable about the patents and the basis for this suit, Mr. Orenshteyn alleged he had no information on the theories under which infringement was alleged and had not discussed the infringement allegations with his attorneys. In his deposition and in response to Citrix's first set of requests for admission, Mr. Orenshteyn stated under oath that he had not discussed with his attorneys any products made or sold by Citrix or whether Citrix would in fact be a named defendant in his lawsuit. As shown in the April 8, 2005, hearing, however, it turned out that prior to filing the complaint, he had actually spoken with his attorneys about Citrix and whether it had infringed on the patents at issue.

Mr. Orenshteyn testified that his deposition testimony that he did not discuss Citrix or its products with his attorneys "wasn't false, but . . . was . . . essentially answering the question based on my instructions that I'm not to include the information I got from my counsel." *See* April 8, 2005, Hearing Transcript at 54. At the hearing, Mr. Orenshteyn attempted to clarify the discrepancy between the deposition testimony and the hearing testimony by testifying that "[t]here was no

2

specific discussion, like, you know, when he told me that tomorrow we're going to file a complaint . . . . I knew that Mr. Fink was . . . studying Citrix . . .[but did not know whether Mr. Fink would actually file the complaint]." *Id.* at 56. At the hearing, Mr. Orenshteyn, again, rather disingenuously, testified that during the deposition he testified that he did not discuss Citrix with Mr. Fink because he "was under instructions not to discuss information that Mr. Fink provided to [him] . . . in privileged communications," but that prior to the lawsuit he did know that "Mr. Fink . . . had documentation and [Fink & Johnson] had access to an installation of Citrix." *Id.* at 56. Similarly, Mr. Orenshteyn attempted to account for his testimonial discrepancies by observing that at the deposition he testified that he had not "*discussed* Citrix with Mr. Fink" whereas at the April 8, 2005, hearing he testified that he had a phone *conversation* about Citrix with Mr. Fink prior to filing the lawsuit. He explained that he "did not consider the discussion. I considered the conversation -- a discussion for me would have been, like, you know, technical discussion about the merits." *Id.* at 57. In other words, Mr. Orenshteyn testified that the questions posed at the deposition and then at the April 8, 2005, hearing were different, and accordingly yielded different responses from him.

Similarly, and in accordance with Mr. Orenshteyn's testimony that only his attorneys knew anything regarding the infringement allegations, Mr. Orenshteyn's response to interrogatories regarding infringement allegations and claim constructions was that such answers were protected by attorney-client privilege. Citrix then tried to depose Mr. Orenshteyn's attorneys, Mr. Fink and Mr. Johnson, to determine the substance of Mr. Orenshteyn's allegations. To avoid the deposition, Mr. Fink and Mr. Johnson sought a protective order and, when that was denied, sought reconsideration of the denial. In seeking the protective order, Mr. Fink and Mr. Johnson claimed that "[t]here is no issue in this case which requires Orenshteyn to rely upon his attorney's advice." When the protective order was denied a second time, Mr. Orenshteyn then offered to supplement his discovery responses with the relevant information.

Based on Mr. Orenshteyn's allegations that he was the only person with discoverable information regarding the patents (since he claimed his attorneys' knowledge and information were protected by attorney-client privilege and the work product doctrine) and that he knew literally nothing regarding the infringement allegations, Citrix moved for sanctions against Mr. Orenshteyn and his attorneys for filing a frivolous lawsuit. I held an evidentiary hearing on the motion for

sanctions at which Mr. Orenshteyn and his attorneys clarified that they had investigated and discussed the infringement allegations prior to filing suit and Mr. Orenshteyn had simply mislead Citrix's attorneys as to those conversations. Stuck between admitting that Mr. Orenshteyn had perjured himself and admitting he had filed a lawsuit without investigating the claims, Mr. Fink began a series of semantic contortions.

> Q. Okay. Did you ever provide Mr. Orenshteyn with a written opinion concerning Citrix?
> A. No.
> Q. Did Mr. Orenshteyn authorize you to file the – the initial complaint against Citrix in this matter?
> A. Yes.
> Q. He did that before you filed the initial complaint?
> A. Yes.
> . . .
> Q. And while Mr. Orenshteyn testified [at his deposition], he testified that he had never discussed Citrix with you prior to the filing of this complaint, correct?
> A. I believe that's what he testified.
> Q. Was Mr. Orenshteyn lying when he testified so?
> A. I don't think so.
> Q. Was he being untruthful when he testified so?
> A. I don't think so.
> Q. Was he incorrect when he testified so?
> A. Yes.
> Q. Did you ever do anything to correct that testimony in this litigation?
> A. No.
> Q. Did Mr. Orenshteyn ever do anything . . . to correct that false testimony during this litigation?
> A. No.
> Q. Did you discuss with Mr. Orenshteyn the fact that his testimony regarding whether he had discussed Citrix with you prior to filing this lawsuit was false?
> Mr. Johnson: Objection. You've made two references to the testimony being false. He said it was incorrect. I don't think he ever said it was false.
> Q. Was his testimony regarding that he had never discussed Citrix with counsel, with you, prior to filing this lawsuit false?
> A. I don't know what you mean by false. It was incorrect.
> Q. It wasn't true, was it?
> A. It was not true.
> Q. Okay. Did you ever discuss that fact with him?
> A. Yes.

| | |
|---|---|
| Q. | Did you ever discuss there was a need to correct that in this lawsuit, the fact that he had given incorrect testimony. |
| A. | He had not given incorrect testimony. That's what he remembered. That's how he remembered it. |
| Q. | Did you ever discuss with Mr. Orenshteyn the need to correct his – his testimony that was not true regarding whether he had discussed Citrix with you prior to filing this lawsuit? |
| A. | For him, it was true. That's the way he remembered it. It was not untrue. |
| Q. | Yes or no. Mr. Fink? |
| A. | Well, you're calling it un – you know, you're making out that -- |
| Q. | All right. Let's – |
| A. | -- told something -- |
| Q. | He test -- |
| A. | -- knowingly, and that's not the case. |
| Q. | He testified that he never discussed Citrix with you prior to filing the lawsuit, correct? |
| A. | Yes. |
| Q. | That's not true, is it? |
| A. | That's right. |
| . . . | |
| Q. | Did he testify that he did not know whether you conducted an investigation to determine whether Citrix infringed his patents before you filed suit on his behalf against Citrix? |
| A. | Right. |
| Q. | Right. He did testify so, correct? |
| A. | He said no. |
| Q. | And that was incorrect, was it not, Mr. Fink, his testimony, according to you here today? |
| A. | It's a yes or no question, Mr. Fink. |
| A. | I don't know what was in his mind. Maybe you do, but I don't know. |
| Q. | It's an inaccurate statement, isn't it, Mr. Fink? Is his testimony correct, according to you? |
| A. | His testimony is what he knew and remembered at that time, and that's what he knew and remembered at that time. So -- |
| Q. | According to you, he did know whether you had investigated Citrix before he filed his lawsuit correct? |
| A. | I don't know if he remembered at that time. |
| Q. | . . . According to you, he did know? |
| A. | Yes, that is true. |
| Q. | Okay. Did you ever do anything to let the court know what Mr. -- Mr. Orenshteyn's testimony here was incorrect? |
| A. | No. |
| . . . | |

5

> Q. Did you discuss [with Mr. Orenshteyn] the need to correct his testimony?
> A. Not directly.
> Q. Did you let Mr. Orenshteyn know that he should let the court -- or Citrix know that his testimony was incorrect?
> A. I've explained to you that his testimony was based upon his memory at that time, and his memory was that he did not know whether or not we made an investigation. His memory was -- as he reported was correct. It just happens that he remembered it wrong.
> Q. So the answer is no?
> A. I don't know what you mean by correct or inaccurate. His -- his --
> Q. His testimony was inaccurate, correct?
> A. His testimony was inaccurate.

*See* Fink Depo. at 78-88. At the evidentiary hearing, Mr. Fink continued:

> Q. . . . Do you know of any reason that would have impaired Mr. Orenshteyn's testimony – ability to testify truthfully at his deposition in this case?
> A. I thought he testified truthfully. I don't know what you are talking about. I don't understand the question.
> Q. Right. So, is everything he said, you believed it to be true at the time, correct?
> A. No. I said that he testified truthfully. It was the truth as he understood it and how he interpreted the questions under the circumstances.
> Q. But I understand you think he misremembered certain things, is that your position?
> A. I thought he may have misremembered it. And he clarified today that he – he understood my instructions to him in a way that I didn't intend them to be understood.
> Q. And you never took steps during the course of the litigation to correct the record, correct?
> A. The record is correct. I've testified to this during the deposition. And I pointed out in the deposition that was taken of me that, in my opinion, Mr. Orenshteyn testified correctly and truthfully as he understood it. And for me to come and say, "No, he didn't testify truthfully; this is the truth," would be a contradiction.
> Q. Was all of Mr. Orenshteyn's testimony factually accurate?
> A. To him it was.
> Court: That's not the question.
> A. I don't know.
> Court: You were -- Mr. Fink, this is just getting worse and worse for you. Some of the questions put to Mr. Orenshteyn had to do with discussions or dialogue, as you put it, between your firm and him, so you were part of that. That

|   |   |
|---|---|
| | means you know whether or not some of his testimony was accurate or not. He's not asking you whether Mr. Orenshteyn thought it was accurate. |
| A. | Oh, well, I don't understand what he's asking me. It was not accurate as I understand it, -- and -- |
| Q. | Did you take any steps to correct the record so that the testimony would be accurate? |
| A. | I did not believe that it was necessary to correct the record, because as I explained, he was giving his understanding of things. And that was the point of the questions, is what he understands. |
| Q. | You took no steps to correct the record, correct? |
| A. | I'm sorry? |
| Q. | You took no steps to correct the record, correct? |
| A. | I was not at liberty to correct the record. |
| Q. | Which means you took no steps to correct the record, isn't that correct? Yes or no, Mr. Fink. |
| A. | No, it is not correct. |
| Q. | Why? |
| A. | I discussed it with Mr. Orenshteyn, and he said that's what he understood. And, therefore, that was the extent that I could -- I could take steps to correct the record. I could not do anything beyond that. |

. . .

|   |   |
|---|---|
| Court: | Let me ask you something, Mr. Fink. You're telling me that if you're aware that your client is testifying falsely in a deposition, you have no obligation to correct that testimony? |
| A. | Your Honor, if I thought that he was testifying falsely, I would have a duty to correct the record. He was testifying as he understood things and as he understood the questions. |
| Court: | He's asked whether or not he discussed Citrix with you, and he says no. That's not false? |
| A. | That's correct, we did not discuss it. I told him information. It was a monologue. There was no back and forth, this and that, and so forth. |

April 8, 2005, Hearing Trans. at 75-78.

### III. LEGAL STANDARD AND ANALYSIS

Citrix seeks sanctions against Mr. Fink and Mr. Johnson under 28 U.S.C. § 1927 and against Mr. Orenshteyn, Mr. Fink, and Mr. Johnson[1] under the court's inherent powers.

---

[1] Mr. Fink and Mr. Johnson argue that Citrix's motion should be dismissed for effecting service of process late. Citrix, however, responded with an email sent to Mr. Fink on February 19. Additionally, Mr. Fink and Mr. Johnson obviously received the motion with adequate

7

### A.  28 U.S.C. § 1927

The text of 28 U.S.C. § 1927 is as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The statutory language makes clear that this sanctioning mechanism is aimed at the unreasonable and vexatious multiplication of proceedings.  "[U]nder § 1927 attorneys obligated to avoid dilatory tactics throughout the entire litigation. . . . [U]nlike Rule 11 "awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards.'" *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).

The plain language of the statute imposes three essential requirements of an award of sanctions:

> First, the attorney must engage in "unreasonable and vexatious" conduct.  Second, that "unreasonable and vexatious" conduct must be conduct that multiplies the proceedings."  Finally, the dollar amount of the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th 1997).  The Eleventh Circuit "has consistently held that an attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'"  *Amlong & Amlong*, 457 F.3d at 1190 (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)).  Bad faith, for purposes of § 1927, turns on the attorney's objective conduct.  *Id.* ("it is clear from the statutory language and the case law that . . . bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct").  "The term 'unreasonably' necessarily connotes that the district court must compare the attorney's conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable according to

---

time to respond since they not only responded, but responded in depth.

8

some objective standard. The term 'vexatiously' similarly requires an evaluation of the attorney's objective conduct." *Id.* 1190-91

Accordingly, "objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly or malevolently." *Id.* at 1191. In other words, "a district court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings." *Id.*[2] An attorney's conduct, however, "must be particularly egregious to warrant the imposition of sanctions – the attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Id.* Mere negligence will not suffice– that is, "an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney." *Id.*

Mr. Fink and Mr. Johnson "needlessly obstructed the litigation" of this action through their conduct and discovery practices that were tantamount to an elaborate game of Three-Card Monte. When Citrix asked Mr. Orenshteyn to explain the basis of its suit, Mr. Orenshteyn claimed that his attorneys knew the basis. When Citrix attempted to depose the attorneys, they sought a protective order claiming attorney-client privilege. When the protective order was denied, they claimed Mr. Orenshteyn had answers and offered to supplement his discovery responses. Furthermore, Mr. Fink and Mr. Johnson had a duty to correct Mr. Orenshteyn's false testimony and deliberately did not do so. At the hearing regarding Mr. Orenshteyn's false testimony and Mr. Fink's and Mr. Johnson's dilatory approach to the discovery process, Mr. Fink testified that he knew at the time of Mr. Orenshteyn's deposition that he had testified inaccurately, but took no steps to correct the testimony.[3]

---

[2] As to the objectivity of a district court's analysis under § 1927, the *Amlong & Amlong* panel explained that "although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[]' if it is done with a malicious purpose or intent." 457 F.3d at 1991-92.

[3] Mr. Johnson has never argued that he should not be liable for the failure to correct testimony, even though Mr. Fink was the attorney present at the deposition when the false statements were made. Regardless, Mr. Johnson was the attorney of record for Mr. Orenshteyn and thus should have been aware of his clients false statements and should have corrected them.

9

There can be no doubt that this conduct was egregiously reckless and that it multiplied the proceedings.

At the April 2005 hearing, Mr. Orenshteyn testified that the answers he gave at the deposition to questions regarding his lack of knowledge about Citrix and his lack of discussions with Fink & Johnson about Citrix were designed to preserve attorney-client privilege. But the answers elicited during Mr. Orenshteyn's deposition were to questions to which Mr. Fink did not object, and throughout the deposition, Mr. Fink went to great lengths to prevent Mr. Orenshteyn from answering questions that might divulge privileged information. Accordingly, I find the attorney-client privilege explanation to be disingenuous at best.

When questioned about Mr. Orenshteyn's testimony at the April 2005 hearing, Mr. Fink engaged in an absurd game of semantics. When asked about the truthfulness of Mr. Orenshteyn's deposition testimony, Mr. Fink attempted to claim that Mr. Orenshteyn had testified "correctly," but "inaccurately" and that, while he had not believed Mr. Orenshteyn's testimony to be "true at the time," he had "testified truthfully." He then attempted to claim that Mr. Orenshteyn's testimony was "correct" because he had not "discuss[]" the infringement allegations with Mr. Orenshteyn, instead he had "told [Mr. Orenshteyn] information. It was a monologue." April 8, 2005, Hearing Trans. at 75-78.

Throughout the hearing, however, Mr. Fink firmly agreed that he had made no attempt to correct the record. As I stated in my previous order, an attorney's failure to correct the false testimony of his client is, at a bare minimum, reckless. An attorney who then goes on to debate the differences between inaccuracy, falsehood, and untruthfulness -- given that his client had crafted his answers to preserve allegedly privileged information, and given that the attorney while present at the deposition objected to certain questions as privileged and expressly permitted others -- is, in my view, tantamount to bad faith (regardless of whether there was subjective intent to engage in vexatious litigation). Mr. Fink's and Mr. Johnson's failure to correct the record does not shield them from sanctions under §1927. Indeed it only worsens their position, as that inaction "unreasonably and vexatiously" multiplied the proceedings leading up to summary judgment, as well as the proceedings related to the previous motions for sanctions and attorneys' fees. *See Amlong & Amlong*, 457 F.3d at 1190. Accordingly, I find that sanctions against Mr. Fink and Mr. Johnson

under § 1927 are appropriate here for the failure to correct Mr. Orenshteyn's testimony as part of their overall gamesmanship in discovery.

### B. Inherent Powers

Citrix also moves for sanctions against Mr. Orenshteyn, Mr. Fink, and Mr. Johnson under the court's inherent powers. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "This power is derived from the court's need 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Byrne*, 261 F.3d at 1106 (quoting *Chambers*, 501 U.S. 32 at 43. "With this in mind, [the Eleventh Circuit has held] that before a court can impose sanctions on an attorney under its inherent powers, it must make a finding of bad faith." *Amlong & Amlong*, 457 F.3d at 1202. *See also Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) ("[B]efore a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'" (quoting *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918 (11th Cir.1982))); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir.1995). Put differently, a court has the power to "assess attorneys' fees and costs against the client or his attorney, or both, when either has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Byrne*, 261 F.3d at 1106 (internal citations and quotation marks omitted). Thus, "[t]he key to unlocking a court's inherent power is a finding of bad faith."*Id.* (internal citations and quotation marks omitted).

As to the conduct of Mr. Fink and Mr. Johnson, "[a] district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers." *Amlong & Amlong*, 457 F.3d at 1189 (citing to *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 n. 6 (11th Cir. 2005). Thus, "[i]f the sanctions [are] permissible under § 1927, then they [are] proper, and there is no need to examine whether the sanctions [are] also permissible under the court's inherent powers." *Id.* Accordingly, for the reasons set forth in the § 1927 analysis above, I find sanctions are also justified against Mr. Fink and Mr. Johnson under my inherent powers.

As to Mr. Orenshteyn, I find that he was an integral part of the discovery antics providing the basis of Mr. Fink and Mr. Johnson's sanctions. Mr. Orenshteyn personally testified inaccurately in

his deposition and failed to correct his testimony. Mr. Orenshteyn also participated in the ruse of refusing all discovery requests with claims of attorney-client privilege, thereby necessitating more discovery and more discovery disputes. Mr. Orenshteyn's testimony and refusal to answer questions regarding the patent claims certainly multiplied proceedings. In addition to spending time and resources on Mr. Orenshteyn's deposition, Citrix also was forced to seek depositions of Mr. Fink and Mr. Johnson because of Mr. Orenshteyn's failure to answer. It was then forced to defend against both the resultant motion for protective order and the motion for reconsideration of the denial of the protective order. Additionally there have now been two rounds of motions for sanctions, one of which involved an evidentiary hearing. Because I find that Mr. Orenshteyn acted in bad faith by testifying inaccurately at his deposition and failing to correct that testimony, and because I find that this action multiplied proceedings, I find sanctions against Mr. Orenshteyn are warranted under the court's inherent powers.

Citrix has asked that, rather than imposing monetary sanctions against Mr. Orenshteyn, I dismiss this case. I decline to take that drastic step at this stage. Only monetary sanctions will be imposed against Mr. Orenshteyn at this juncture.

### IV. CONCLUSION

Citrix's motion for sanctions against Mr. Fink and Mr. Johnson under 28 U.S.C. § 1927 and against Mr. Fink, Mr. Johnson, and Mr. Orenshteyn under the court's inherent powers [D.E. 337] is GRANTED IN PART. The matter is referred to Magistrate Judge McAliley for a report and recommendation as to the determination of the amount of sanctions.

DONE and ORDERED in chambers in Miami, Florida, this 30th day of September, 2010.

 *(signature)*
 Adalberto Jordan
 United States District Judge

Copy to:   All counsel of record
          Magistrate Judge McAliley